ROBERT S. BREWER, JR.
United States Attorney
DYLAN M. ASTE
Assistant U.S. Attorney
California Bar No. 281341
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
(619) 546-7621
Dylan.Aste@usdoj.gov

Attorneys for United States

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Petitioner,<br><br>v.<br><br>THE BUREAU of CANNABIS CONTROL, a State of California agency,<br><br>Respondent. | Case No.: **'20 CV 1375 BEN LL**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO ENFORCE UNITED STATES DRUG ENFORCEMENT ADMINISTRATION ADMINISTRATIVE SUBPOENA** |

///

The Bureau of Cannabis Control, a State of California agency ("BCC"), has not complied with a lawful administrative subpoena issued by the United States Department of Justice, Drug Enforcement Administration ("United States" or "DEA"). Accordingly, the United States petitions the Court to enter an order requiring the BCC to comply with the subpoena. *See* 21 U.S.C. § 876(c).

## BACKGROUND

In January of this year, as part of its criminal investigation, the DEA lawfully issued administrative subpoena R6-20-252406 ("Subpoena") and personally served it on the BCC. Pet. Ex. A. The Subpoena demands the production of specific

documents for six entities, from January 1, 2018 to the "[p]resent."[1]   About two weeks later, the BCC stated in a letter that it would not produce the documents because the Subpoena "does not specify the relevancy" and requests information that is confidential, protected, and part of pending licensing investigations.  Pet. Ex. B.[2] The BCC's letter also cited to California state laws and one federal law to support its non-compliance position.  *Id.*

Over the next two months, the United States spoke with BCC attorneys and attempted to assure them of the Subpoena's validity and the necessity for compliance, but the BCC's position did not change.  The United States sent a letter to the California Attorney General (and BCC Counsel) in May and provided an opportunity to respond prior to filing this action.  The BCC stated that its position had not changed, and it has not complied with the Subpoena to date.

The authorities cited on the face of the Subpoena preclude the BCC's refusal to comply with the lawful Subpoena.  The United States has made good faith efforts to negotiate compliance and has provided further information to the BCC regarding legal authority for compliance and law enforcement relevance of the requested information.  The United States now requests that the Court enter an order requiring the BCC's compliance with the Subpoena without further delay.

## LEGAL STANDARD

The scope of judicial inquiry in an agency subpoena enforcement proceeding is "quite narrow."  *United States v.  Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1113 (9th Cir. 2012).  The three-part inquiry is: "(1) whether Congress has granted the [agency] authority to investigate; (2) whether procedural requirements have been

---

[1] The DEA served an administrative subpoena on the BCC in November 2019 that contained the same document requests.  To avoid protracted litigation and to relieve the BCC's expressed concerns regarding that subpoena's service, the United States withdrew that subpoena and served the subject Subpoena.

[2] This letter is offered to provide the Court a complete and fair account of the stated reasons for non-compliance as summarized by the United States.

*U.S. v. Bureau of Cannabis Control*

followed; and (3) whether the evidence [sought] is relevant and material to the investigation." *Id.*; *see also Oklahoma Press Publ'g Co. v. Walling*, 327 U.S. 186, 209 (1946) (discussing that a court may enforce an administrative subpoena upon a showing that "the investigation is authorized by Congress, is for a purpose Congress can order, and the documents sought are relevant to the inquiry"). Courts "must enforce administrative subpoenas unless the evidence sought by the subpoena is plainly incompetent or irrelevant to any lawful purpose of the agency." *EEOC v. Federal Express Corp.*, 558 F.3d 842, 854 (9th Cir. 2009). Relevance is determined in terms of the investigation rather than as prospective trial evidence, and courts have emphasized that this prong of the inquiry is "not especially constraining." *Id.* And as a court in this district recently stated, the agency does not have to file a declaration when enforcing an administrative subpoena. *See United States v. State of California*, 3:18-cv-2868, 2019 WL 2498312, at *2 (S.D. Cal. May 9, 2019) (holding that the State of California must produce documents demanded in a DEA administrative subpoena).

Even if all three parts are satisfied, "a Fourth Amendment reasonableness inquiry must also be satisfied." *Golden Valley Elec. Ass'n*, 689 F.3d at 1113. But in the context of administrative subpoenas, the Fourth Amendment's restrictions are limited. *Id.* at 1115. The only additional inquiry required by the Fourth Amendment is whether the "specification of the documents to be produced [is] adequate, but not excessive, for the purposes of the relevant inquiry." *Id.*

## ARGUMENT

### 1. The Subpoena Satisfies the Recognized Enforcement Requirements

The Unites States is not aware of any court that has invalidated DEA's use of administrative subpoenas to obtain material relevant to an investigation. The Court should now enforce this Subpoena because it meets the narrow requirements. *See id.* at 1113.

///

First, the DEA has authority to investigate. Congress enacted the Controlled Substances Act ("CSA") as part of the Comprehensive Drug Abuse Prevention and Control Act of 1970 to "strengthen law enforcement tools against the traffic of illicit drugs." 21 U.S.C. § 801 *et seq.*; *Gonzales v. Raich*, 545 U.S. 1, 10 (2005). The CSA's main objectives are "to conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances." *Gonzales*, 545 U.S. at 12. The CSA gives the Attorney General the authority to issue administrative subpoenas relevant or material to an investigation. 21 U.S.C. § 876(a). This authority has been delegated to the DEA. *See* 28 C.F.R. § 0.100 and pt. 0, app. to subpart R, sec. 4.

Second, the DEA followed the procedural requirements. A DEA Group Supervisor properly issued the Subpoena. A DEA Special Agent then properly served it on the BBC at its office near Sacramento at BCC Counsel's demand. To resolve any misinterpretation, this Subpoena states that personal appearance is not required for document production and to email the documents to a specified Special Agent.[3] The BCC has not disputed a failure to follow procedural requirements during its discussions with the United States regarding the Subpoena.

Third, the evidence is relevant and material to a DEA investigation. As a court in this district recently held when it enforced a DEA administrative subpoena, "the Court finds that 'the [not] especially constraining' relevance standard could have been satisfied upon a facial reading of the subpoena itself." *State of California*, 2019 WL 2498312, at *2 (The subpoena at issue in this action stated there was an

---

[3] BCC Counsel stated that the BCC would not comply with the previous subpoena because of procedural issues including that the document production location is located more than 500 miles away from the place of service, which may have been based on 21 U.S.C. § 876(a). *See id.* (stating that witness attendance and document production may be any place in the United States, but a witness does not have to appear <u>at a hearing</u> more than 500 miles distant from the service location). The BCC presumably has accepted that this provision does not apply here because it has not raised this issue since receiving the Subpoena at issue.

4

ongoing investigation.); *see also EEOC*, 558 F.3d at 854 ("the relevance requirement is not especially constraining" (internal quotation marks omitted)).   Like the subpoena in *State of California*, the Subpoena here reads that there is a "criminal investigation being conducted."  Pet. Ex. A.  The Subpoena actually goes beyond the *State of California* subpoena and specifically reads that "[t]he information sought . . . is relevant and material to a legitimate law enforcement inquiry." *Id.*  The evidence is thus relevant and material to a DEA investigation as provided by a facial reading of the Subpoena.

Finally, the Subpoena's "not excessive" document request satisfies the Fourth Amendment reasonableness requirement.  *See Golden Valley Elec. Ass'n*, 689 F.3d at 1113.  The narrowly-tailored Subpoena seeks the production of three specific document types: "unredacted cannabis license(s), unredacted cannabis license application(s), and underacted shipping manifest(s)"; it seeks the documents for only six entities, which include three corporations and each corporation's presumed owner; and it seeks the documents for a limited period of roughly two years, stated as "January 1, 2018 to Present" (otherwise known as the date of production). *See* Pet. Ex. A.  Thus, the Subpoena satisfies the narrow inquiry and the Court should enforce it.

**2.  <u>No Law Prevents the BCC from Complying with the Subpoena</u>**

The United States is aware of no authority holding that a state entity may rely on state law-based privacy interests to refuse to respond to a federal subpoena, issued pursuant to federal law.  And the BCC has not presented any federal law that permits non-compliance with this federal subpoena.

A. <u>State Laws Do Not Prevent Compliance</u>

In refusing to comply with the Subpoena, the BCC asserted that California state laws prevent disclosure of the requested documents.   These state laws, however, either permit disclosure or do not apply.  Yet even if a state law does purport to prevent production, the Supremacy Clause would preempt such law.

5

*U.S. v. Bureau of Cannabis Control*

### i.   The cited state laws support compliance or do not apply

The BCC cited four state laws (below).  *See* Pet. Ex. B.  These state laws either actually support disclosure to law enforcement, which includes the DEA, or do not apply to disclosure to the DEA.

- *California Civil Code § 1798.24*: This pertains to the unauthorized disclosure of personal data.  It supports disclosure to law enforcement when required for an investigation.  *See* Cal. Civ. Code § 1798.24(o).

- *California Penal Code § 11142*: This pertains to the unlawful furnishing of criminal history information to a person or agency not authorized by law to receive such information.  The DEA is authorized by law to access criminal history information.  *See generally*, 28 U.S.C. § 534, 28 U.S.C. § 0.85(a)-(b), and 28 U.S.C. § 0.100.

- *California Government Code § 6254(f), (k), and (n)*: This pertains to the California Public Records Act's exceptions to the disclosure of records to the public, which includes non-disclosure of investigatory files for licensing purposes (subsection f), of records when prohibited by law or privilege (subsection k), and of personal worth or financial data (subsection n).  It is unclear how the California Public Records Act pertains to disclosing records to the DEA.

- *California Business and Professions Code § 26067(b)(6)*: This  pertains to a track-and-trace program for the movement of cannabis, and it prevents disclosure pursuant to the California Public Records Act when necessary.  It supports disclosure to state or local law enforcement agencies.  Cal. Bus. & Prof. Code § 26067(b)(7).

The BCC also generally references trade secrets and proprietary information protections along with privacy laws, but it did not provide the specification or application of these general references.

*///*

*U.S. v. Bureau of Cannabis Control*

ii.  <u>Federal law preempts state law</u>

None of the cited state laws prevent producing the documents to the DEA. But it also would not matter.  That is because when state law does contradict federal law that requires production, federal law, not state law, controls.  And federal law requires production of information in response to Section 876 subpoenas in CSA investigations.

The Supremacy Clause precludes state law from interfering with the enforcement of federal law. U.S. Const., art. VI, cl. 2.  The Supremacy Clause gives Congress the power to preempt state law expressly.  *Hillman v. Maretta*, 569 U.S. 483 (2013).  "Where enforcement of . . . state law would handicap efforts to carry out the plans of the United States, the state enactment must, of course, give way." *James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 103-104 (1940).  Likewise, when "compliance with both federal and state regulations is a physical impossibility," the "state law is nullified to the extent that it actually conflicts with federal law." *See Hillsborough Cnty., Fla. v. Automated Med. Labs.*, 471 U.S. 707, 713 (1985).

The United States Congress drafted the CSA to expressly preempt state law when "the two cannot consistently stand together."  *See* 21 U.S.C. § 903.  Any state law on which the BCC relies to prevent compliance with the Subpoena cannot consistently stand with the CSA.[4]  Such state law would create a physical impossibility or a sufficient obstacle to the operation of the CSA.  *See Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (discussing both types of conflict preemption: physical impossibility and sufficient obstacle); *see also United States v. Zadeh*, 820 F.3d 746, 750–52 (5th Cir. 2016) (applying the sufficient obstacle test to hold that 21 U.S.C. § 876 preempts a provision of the Texas Occupations Code barring compliance with administrative subpoena absent patient consent or application of an enumerated exception under state law).

---

[4] This also includes any state laws on which the BCC may attempt to rely, such as requiring a warrant or Grand Jury subpoena.

*U.S. v. Bureau of Cannabis Control*

This principle has already been applied in conflicts within the Ninth Circuit specifically involving DEA administrative subpoenas under 21 U.S.C. § 876. *See Oregon Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin.*, 860 F.3d 1228 (9th Cir. 2017) (involving a DEA subpoena demand for patient prescription records from Oregon's prescription drug monitoring program).  And a court in this district directly addressed this issue with respect to state privacy laws, stating that "[t]o the extent any privacy protections under California conflict with the [CSA], the CSA expressly preempts state law."  *See State of California*, 2019 WL 2498312, at *3 (citing 21 U.S.C. § 903).  Thus, no California state law can prevent the BCC from producing the documents because federal law would preempt it, and the state laws that the BCC cited either do support disclosure to law enforcement or do not apply.

B. <u>Federal Law Does Not Prevent Production</u>

The BCC references federal law when providing a reason for non-compliance, specifically stating that 26 U.S.C. § 6103 limits disclosure of taxpayer return information, including taxpayers' identifying numbers.  *See* Pet. Ex. B.  It is unclear what type of applicants' Internal Revenue Service ("IRS") taxpayer return information the BCC possesses.[5]  *See* 26 U.S.C. § 6103(b)(3) (defining "taxpayer return information" as information that the taxpayer provides to the IRS).  But for purposes of enforcing compliance with the Subpoena, it likely does not matter for two key reasons.

///

---

[5] The BCC possibly refers to information it may receive from California state tax entities (not IRS) regarding whether applicants pay their state tax obligations. *See, e.g.*, Bureau of Cannabis Control, Cannabis Distributor License Application, at p. 4, (rev. Feb. 2020) (available at https://www.bcc.ca.gov/clear/distributor_application.pdf (last visited July 9, 2020)).  This application also provides that the applicant's "information may be disclosed . . . to another government agency as required by state or federal law . . . in response to a subpoena."). *Id.*

First, the disclosure limitation in Section 6103 of the Internal Revenue Code applies to only "the release by the IRS of information received from taxpayers." *Stokwitz v. United States*, 831 F.2d 893, 895 (9th Cir. 1987) (emphasis in original) (involving a dispute over tax return information in the taxpayer's possession that was obtained without legal service). The IRS presumably does not provide BCC applicants' taxpayer return information to the BCC, so any IRS taxpayer return information that the BCC may possess likely did not "pass through" or "flow . . . through the IRS." *See id.* at 896.

Second, the Subpoena does not seek IRS taxpayer return information. *See* Pet. Ex. A. The United States asked BCC Counsel whether the BCC has such information in its responsive documents, and BCC Counsel said she is not aware of specific records received from the IRS. In the event that the BCC received such information from the IRS and currently possesses it in documents responsive to the Subpoena, the United States would be happy to discuss necessary accommodations for production.

///
///
///
///
///
///
///
///
///
///
///
///
///

*U.S. v. Bureau of Cannabis Control*

## **CONCLUSION**

The DEA is authorized to investigate and issue subpoenas under the CSA. The Subpoena at issue meets the procedural requirements, is relevant and material to a DEA investigation, and is specific and narrow in accordance with the Fourth Amendment reasonableness requirement. The United States addressed every non-compliance reason the BCC stated (directly and indirectly). Not one reason permits the BCC to refuse to comply with the Subpoena. And even if a state law does purport to prevent compliance, the Supremacy Clause would preempt such law. The United States, therefore, respectfully requests the Court to enter an order requiring compliance with the Subpoena.

Respectfully submitted,

DATED: July 20, 2020
ROBERT S. BREWER, JR.
United States Attorney

*s/ Dylan M. Aste*
DYLAN M. ASTE
Assistant United States Attorney

Attorneys for the United States

*U.S. v. Bureau of Cannabis Control*